UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 C 6436 |
| ) | No. 10 CR 1068-2 |
| ) | |
| JOSE MALDONADO, ) | Judge Rebecca R. Pallmeyer, |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Jose Maldonado was convicted on multiple counts relating to drug distribution and sentenced to 22 years in prison. Maldonado now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that he was denied the effective assistance of counsel [1*, 3*].[1] He also moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [359, 368]. As explained below, most of Maldonado's claims of ineffective assistance lack merit, but the court will conduct an evidentiary hearing to determine whether counsel was ineffective during plea negotiations. The court withholds judgment on his compassionate release motion pending review of Maldonado's updated medical and disciplinary records.

## BACKGROUND

On December 16, 2010, Maldonado was indicted on six counts: conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 2); three charges of using of a telephone to commit a felony in violation of 21 U.S.C. § 843(b) (Counts 3–5); and possession of a firearm following a felony conviction in violation of 21 U.S.C. § 922(g)(1) (Count 7). (Indictment [1] at 1–9). On December 21, the government filed an

---

[1] Citations to Maldonado's civil docket (No. 1:19-cv-06436) are denoted with an asterisk. All other citations are to Maldonado's criminal docket (No. 1:10-cr-01068-2).

1

information disclosing that it would seek an enhancement of Maldonado's mandatory minimum sentence from 10 to 20 years under 21 U.S.C. § 851.  (Information [8]).  *See* 21 U.S.C. §§ 841(b)(1)(A), 851.  With that § 851 enhancement, the statutory maximum for Maldonado's possession charge increased from 20 to 30 years.  *Id.* § 841(b)(1)(C).  Maldonado did not object to the § 851 notice and entered a plea of not guilty on all counts [11].

Maldonado was represented, pretrial, by Attorney Patrick Blegen, who engaged in plea negotiations with the government.   On August 24, 2011, Blegen made a proposal (the record does not contain any details) to the Assistant United States Attorney, who planned to "take [it] back to [his] chain." (8-24-11 Hearing [345] at 2–3.)  The court set a change of plea hearing for November 15, 2011 [54].  But at the November 15th hearing, the prosecutor informed the court that he and Blegen "realized we had one issue left to hammer out," and that he expected Maldonado to enter "a blind plea.  And the issue now is how many counts is he going to be required to plead to blindly? We are going to drop the 851.  So there has been significant progress made." (11-15-11 Hearing [346] at 2.)  The court set a new change of plea hearing for December, but on November 16, Blegen moved to withdraw per Maldonado's request [60, 61].  The court appointed Steven M. Levy as Maldonado's new attorney, and the change of plea hearing was re-set to January 20, 2012.  (11-28-11 Hearing [347] at 2–4.)  It appears the parties continued to engage in negotiations, but Maldonado did not enter a plea at the January 20 hearing [71]. Instead, a few days later, Levy moved to withdraw, again at Maldonado's request [74].

A third attorney, Gal Pissetzky, was then appointed as counsel [80], with Michael Schmiege appointed as additional counsel [92, 94].  Both remained Maldonado's counsel through trial and sentencing, and engaged in plea negotiations on his behalf, evidently for several months. At an October 12, 2012 hearing, the prosecutor reported that the parties "have been working on a possible plea," with the terms "sketched out," but he still needed to get the agreement approved by his supervisors, because "we are dismissing a bunch of counts against Mr. Maldonado, and that just takes some signing off by folks above me in the office."  (10-30-12 Hearing [348] at 2–3.)

The date for a change of plea hearing was reset multiple times and eventually scheduled for April 15, 2013 [126]. On that date, Mr. Pissetzky advised the court that the government had made "a few offers," that he and Mr. Schmiege had "[gone] over" them with Mr. Maldonado, and that Maldonado had "cho[sen] to proceed to trial at this time." (4-15-13 Hearing [349] at 2.) Neither defense counsel nor the government disclosed the terms of the plea offers.

The case proceeded to trial on March 16, 2015. Maldonado and his codefendant Francisco Masais (a third coconspirator, Edwin Rodriguez, was a cooperating defendant who pleaded guilty) acknowledged that they engaged in cocaine trafficking. Defense counsel primarily argued that the evidence, consisting of Rodriguez's testimony and dozens of recorded conversations discussing cocaine transactions, did not establish the conspiracy charged in the indictment. The court gave a jury instruction on buyer-seller relationships per defense counsel's request, and an instruction on multiple conspiracies over their objection. (Trial Tr. at 1081–118 [306–319].) The jury found Maldonado guilty on all counts. (*Id.* at 1410–12.) The court denied Maldonado's motion for acquittal or a new trial, in which he argued, among other things, that the evidence was insufficient to support a conviction and that the court erred in giving the multiple conspiracies instruction. (Post-Trial Op. [266].)

At sentencing, the court found that Maldonado was responsible for 24 kilograms of cocaine—more than the seven kilogram amount for which the defense argued, but less than the 50-plus kilogram amount proposed by the government—for a base offense level of 32. (Sent'g Tr. [344] at 21–23); *see* U.S.S.G. § 2D1.1(c). Over defense counsel's objections, the court imposed two-level enhancements for possession of a firearm in relation to the offense, use of violence or threats of violence, a pattern of criminal conduct engaged in as a livelihood, and Maldonado's role as a supervisor. (Sent'g Tr. at 39–53); *see* U.S.S.G. §§ 2D1.1(b)(1), (2), (15)(E), 3B1.1(c). The court also rejected defense counsel's request for the two-level reduction for acceptance of responsibility, but noted that Maldonado's "allocution demonstrates that he has come to terms with his conduct and definitely wants to change," and "I would certainly have

3

imposed a longer sentence were it not for [his] obvious remorse." (Sent'g Tr. at 58, 86.) At offense level 40 and a criminal history category of V, Maldonado's guideline range was 30 years to life. (*Id.* at 60.) The government argued for a sentence of 27 to 30 years, while the defense urged the court to impose a sentence no longer than the 20-year mandatory minimum for Maldonado's conspiracy conviction. (*Id.* at 61, 67.) At sentencing and in the sentencing memorandum, defense counsel made several arguments about the 18 U.S.C. § 3553 factors, presented multiple character letters, and discussed Maldonado's traumatic childhood, early drug use, and rehabilitation in custody. The court imposed a sentence of 22 years, explaining: "[M]y discretion is [cabined] by the mandatory minimum, and I think it's appropriate in this case. . . . I think some amount greater than 20 years is appropriate, but I don't know, given Mr. Maldonado's obvious remorse and very significant insight that he's shown me in this submission, that 27 years is necessary." (*Id.* at 81–82.)

Represented by Pissetzky and a new attorney, Maldonado appealed, again arguing insufficiency of the evidence and challenging the multiple-conspiracies instruction; but the Seventh Circuit affirmed. *See United States v. Maldonado*, 893 F.3d 480, 487 (7th Cir. 2018). Maldonado, acting pro se, now seeks relief pursuant to § 2255, claiming ineffective assistance of counsel during pre-trial, trial, and sentencing proceedings. He has also moved for compassionate release pursuant to § 3582(c)(1)(A).

## **DISCUSSION**

### I. Ineffective Assistance of Counsel

An individual in federal custody may seek postconviction relief under 28 U.S.C. § 2255 if his sentence was imposed in violation of the Constitution or laws of the United States. Though other claims must be exhausted on direct appeal, an ineffective assistance of counsel claim may and often should be raised for the first time in a § 2255 petition. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Under the familiar two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming ineffective assistance must establish that (1) his

4

attorney's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the outcome of the proceedings would have been different, but for the attorney's failures. *Id.* at 687. This test, and the Sixth Amendment right to effective counsel, extends beyond trial. *See Lafler v. Cooper*, 566 U.S. 156 (2012) (plea negotiations); *Glover v. United States*, 531 U.S. 198 (2001) (sentencing). Because there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the court's review of an attorney's performance is "highly deferential." *Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011).

### A. Sentencing Enhancement

For the first time in a reply memorandum, Maldonado argues that his counsel was ineffective in not objecting to the 21 U.S.C. § 851 sentencing enhancement, which triggered a 20-year mandatory minimum. Maldonado did not mention the § 851 enhancement in his original petition, which he timely filed on September 19, 2019, the date on which his one-year filing deadline expired.[2] Maldonado's reply brief (and therefore his new § 851 argument) was not filed until March 2020, well after that deadline. (Def.'s Reply [*16, *17].) Maldonado's original ineffective assistance of counsel claim does not obviously encompass this argument concerning the § 851 enhancement, and therefore does not appear to relate back to his timely-filed petition. *See Beason v. Marske*, 926 F.3d 932, 938 (7th Cir. 2019) (an amended habeas petition must have a "common core of operative facts" to relate back, not just relate to "the same trial, conviction, or sentence") (quoting *Mayle v. Felix*, 545 U.S. 644, 662–64 (2005)). In any event, as explained below, the sentencing enhancement argument lacks merit.

---

[2] Section 2255's one-year deadline begins to run when the defendant's judgment of conviction becomes final. 21 U.S.C. § 2255(f). For Maldonado, that was 90 days after entry of the Seventh Circuit's judgment on June 21, 2018, when his time for filing a certiorari petition expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003); Supreme Court Rule 13.3. Because Maldonado placed his petition in the prison mail system on September 19, 2019, it was timely. *See Houston v. Lack*, 487 U.S. 266 (1988). The government agrees that Maldonado timely filed his § 2255 petition. (Gov't Resp. [*9] at 8 n.4.)

Three primary statutory provisions govern federal drug trafficking and related sentencing enhancements: § 841(a) prohibits acts of drug distribution; § 841(b) sets forth statutory penalties for distribution, based on the quantity of drugs and number of prior convictions; and § 851 identifies procedures the government must follow before seeking an enhanced sentence, including identifying the prior conviction it is relying on by way of an information filed prior to trial. *See Arreola-Castillo v. United States*, 889 F.3d 378, 384 (7th Cir. 2018). In this case, Maldonado was convicted on two drug counts: First, he was found guilty of conspiracy to distribute more than five kilograms of cocaine; because of this drug amount, the conviction was governed by the penalties in § 841(b)(1)(A), which has a baseline mandatory minimum of ten years. Second, Maldonado was convicted of cocaine possession, but because this count of conviction did not rest on a specific drug quantity, the penalty was governed by § 841(b)(1)(C), which carries a statutory maximum of 20 years but no baseline minimum.

The sentence Maldonado faced was enhanced by his prior Illinois conviction for cocaine distribution, a conviction disclosed by the government in the required information filed prior to trial.[3] *See* 720 ILCS § 570/401(a)(2)(B). At the time of Maldonado's sentencing, the only qualifying prior conviction was a "felony drug offense," defined as an offense involving a controlled substance and punishable by more than one year imprisonment. *See* 21 U.S.C. § 802(44) (2016). Because Maldonado had one prior conviction for a felony drug offense, the mandatory minimum

---

[3] The Seventh Circuit recently held that Illinois's definition of cocaine is broader than the federal definition. *United States v. Ruth*, 966 F.3d 642, 647–48 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 1239 (2021). Under the categorical approach used for § 851 sentencing enhancements, the *Ruth* defendant's Illinois conviction for possession of cocaine could not qualify as a prior "felony drug offense." *Id.* at 650. Maldonado was convicted under a different subsection of the same Illinois statute at issue in *Ruth*. *See* 720 ILCS §§ 570/401(a)(2)(B), (c)(2). Maldonado has not suggested that counsel was ineffective for failing to anticipate *Ruth*.

sentence for his conspiracy conviction was increased to 20 years, and the maximum sentence on the possession count was increased to 30 years.[4] See §§ 841(b)(1)(A), (C) (2016).

In his § 2255 petition, Maldonado primarily argues that counsel was ineffective because he was convicted under § 841(b)(1)(C), so the § 851 enhancement had the effect of increasing his statutory maximum penalty but did not trigger a 20-year mandatory minimum. This argument ignores the fact that while Maldonado's possession conviction was governed by § 841(b)(1)(C), he was also convicted of conspiracy to distribute five kilograms of cocaine. The penalty for that count, set forth in § 841(b)(1)(A), was, at the time of Maldonado's sentencing, a mandatory minimum of ten years, and up to 20 years if the defendant had a qualifying prior conviction. Maldonado's reliance on *United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009), is therefore misplaced. In that case, the trial court incorrectly concluded that the defendant's prior conviction triggered a 20-year statutory minimum under § 841(b)(1)(C). *Id.* at 1031. Because Maldonado was also convicted under § 841(b)(1)(A), the 20-year mandatory minimum for that conviction applies, and counsel was not ineffective in failing to challenge the sentence imposed for the conspiracy charge.

### B. Plea Negotiations

Maldonado claims that his counsel was ineffective in advising him to reject a plea deal. He contends that he would have accepted a 15-or 20-year sentence, he told counsel this, and that the government in fact offered his attorney a plea deal that called for a "base term of twenty years of imprisonment," and would have allowed counsel "the freedom to argue any potential

---

[4] On December 21, 2018, Congress enacted the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194. The First Step Act, among other things, changed the definition of a qualifying prior conviction from a "felony drug offense" to a "serious drug felony or serious violent felony." *Id.* § 401(a)(2)(B). Additionally, it amended the § 851 sentencing enhancements such that Maldonado would have faced a 15-year mandatory minimum based on one prior conviction. *Id.* § 401(a)(2)(A)(i). These amendments are generally prospective, unless "a sentence for the offense has not been imposed as of such date of enactment." *Id.* § 401(c). That is not the case for Maldonado, whose sentence was imposed in December 2016. *See United States v. Sparkman*, 973 F.3d 771, 774 (7th Cir. 2020) (a sentence is imposed when the district court sentences the defendant, regardless of later appeals).

sentence enhancements [and] 3553 factors that might reduce the twenty-year base term." (Def.'s Mem. [*1] at 6.) Counsel "squandered that opportunity to cap the sentence," Maldonado argues, by assuring him that he could win acquittal or be sentenced to a term shorter than 20 years, should he be convicted at trial. (*Id.* at 7.) Under the two-part *Strickland* test, Maldonado must not only show that this advice was objectively incompetent, but also that it was prejudicial—which, in this context, means "a reasonable probability that the plea offer would have been presented to the court, the court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed." *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013).

The court concludes that an evidentiary hearing is necessary to evaluate Maldonado's claim. Where a petitioner alleges facts that would entitle him to relief, and those allegations are not vague or conclusory, the court must grant an evidentiary hearing. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). Maldonado's § 2255 petition offers concrete allegations, and the record provides some support for those allegations: the government made Maldonado "a few [plea] offers," and, at different status hearings, suggested the possibility of "drop[ping] the 851" and "dismissing a bunch of counts." (4-15-13 Hearing at 2; 11-15-11 Hearing at 2; 10-30-12 Hearing at 3.) It is possible that the prosecutor offered a deal in which he would withdraw the § 851 enhancement, meaning that Maldonado would face a mandatory minimum on the conspiracy charge of just ten years. Alternatively, the government could have plausibly "capped" Maldonado's sentence by agreeing to dismiss all counts other than possession with intent to distribute, which (without the § 851 enhancement) would carry a maximum penalty of 20 years under § 841(b)(1)(C), less severe than the 22-year sentence this court imposed. If such an offer was made, given the extensive evidence of Maldonado's drug dealing, advising him to reject that offer would be constitutionally deficient. *See Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) ("[C]ounsel's performance may fall below the minimum threshold if he advises his

8

client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses.").

The government contends this court should dismiss Maldonado's petition without holding an evidentiary hearing or even reaching the *Strickland* test, because Maldonado failed to meet his preliminary evidentiary burden. For claims such as Maldonado's, a petitioner must have "*some* threshold showing of the evidentiary basis, beyond mere conclusory allegations, that supports a finding that the government in fact offered a plea deal." *Martin v. United States*, 789 F.3d 703, 707 (7th Cir. 2015). But this burden is not "onerous," and the Seventh Circuit has explained that even a docket entry setting a change of plea date suffices. *Id.* The record in this case contains numerous entries setting dates for a change of plea hearing and making reference to plea negotiations. In addition, defense counsel expressly stated—on the record and in the government's presence—that Maldonado had received multiple plea offers. This record is sufficient to meet Maldonado's nominal preliminary burden. True, Maldonado has not provided detailed, objective evidence of the terms of the alleged plea offer, but neither has the government—which is presumably in a better position to access this information than an incarcerated, pro se litigant.

The remainder of the government's arguments hinge on potential inferences from the record, some more plausible than others. For instance, the government argues that Maldonado's claim must fail "in the event" plea negotiations ended because the prosecutor could not secure approval for withdrawing the § 851 notice, or "if" Maldonado rejected an agreement negotiated by his original attorney, and new counsel was not successful in changing Maldonado's mind. (Gov't Resp. [*9] at 14–15.) These hypothetical scenarios do not satisfy the court that an evidentiary hearing is unnecessary. Nor do the government's arguments about prejudice require dismissal of the petition at this stage. The court has already explained how, depending on the terms of a proposed plea agreement, Maldonado may have received a less severe sentence. There may as yet be, in the government's words, "no evidence" on whether Maldonado or the court would

9

have accepted the terms and factual basis of the plea, but this also does not mean that the court ought not conduct an evidentiary hearing. The court is unable, on the current record, to determine whether Maldonado's counsel was ineffective in advising him to reject the offered plea deals.

### C. Counsel's Trial Performance

Maldonado's arguments about his defense counsel's trial performance are less persuasive. First, he broadly claims that his counsel "failed to mount a credible defense," but does not develop this argument, and even if he had, on the record in this case, the court would not deem it sufficient to support a finding of ineffective assistance. Second, Maldonado points to the Seventh Circuit's opinion affirming the multiple conspiracies jury instruction; the appellate court explained that defense counsel's opening statement "opened the door to a multiple conspiracies theory" and made the instruction "appropriate." *United States v. Maldonado*, 893 F.3d 480, 487 (7th Cir. 2018). In that opening statement, defense counsel argued that "the government must prove beyond a reasonable doubt that one single conspiracy existed between [Maldonado, Masais, and Rodriquez]," and "separate, multiple conspiracies, multiple buying and selling cannot be proof beyond a reasonable doubt to the charge of one single conspiracy." (Trial Tr. 36, 42–43.) Defense counsel initially sought, and then withdrew, the multiple conspiracies jury instruction. (*Id.* 48.) Having been alerted to the issue, however, the government requested the instruction, which the court allowed over defense counsel's vigorous objection. (*Id.* at 941–51, 1090–1118.)

According to Maldonado, his counsel's introduction of multiple conspiracies was "a faux pa[s] that made the rest of the trial proceedings virtually a foregone conclusion." (Def.'s Mem. at 13.) As the court understands his argument, Maldonado believes that if defense counsel had not made reference to the multiple conspiracies, the jury instruction would not have been given, and the jury would not have convicted him of conspiracy—presumably because they would not be able to find "one single" conspiracy between all three men. Putting aside this tenuous chain of events, Maldonado is incorrect in assuming that the jury was required to find that all three men

joined a single conspiracy. Maldonado could be found guilty so long as the evidence showed that he joined the agreement alleged in the indictment (an agreement to distribute five kilograms of cocaine).[5] *See United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir. 1991). In any event, there is no basis for the conclusion that the instruction prejudiced Maldonado; if anything, it warned the jury against finding him guilty for the conduct of a conspiracy of which he was not a member (for example, a conspiracy between Masias and Rodriguez alone), or a conspiracy not alleged in the indictment (for example, a conspiracy related to weapons).

Defense counsel's choice to reference multiple conspiracies was a matter of strategy. Reasonable strategic decisions cannot generally support a claim of ineffective assistance of counsel, even where, in hindsight, "another decision may have led to a better result," or counsel expresses some post-decision "regret." *Corral v. Foster*, 4 F.4th 576, 585 (7th Cir. 2021); *see also Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010) ("It is well established that our scrutiny of counsel's trial strategy is to be deferential and that we do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient."). There is no basis for finding ineffective assistance at trial.

### D. Sentencing

Maldonado also challenges his attorney's advocacy at sentencing, in ways other than the matter of § 851. He first points to defense counsel's failure to seek a Residential Drug and Alcohol Program (RDAP) recommendation. RDAP is an intensive drug treatment program for federal inmates with substance abuse problems. *See* 28 C.F.R. § 550.53. If an eligible inmate successfully completes RDAP, the Bureau of Prisons (BOP) has discretion to reduce his sentence

---

[5] If a jury finds multiple conspiracies, rather than the single conspiracy alleged in the indictment, that is a problem of variance, or the difference between the government's indictment and proof. *See Townsend*, 924 F.2d at 1390. Variance changes the outcome of the proceedings only if the defendant was prejudiced at trial. *See id.* ("[T]o overturn a conspiracy conviction on the ground of variance, an appellant must show both that he did not conspire with each defendant *and* that he was prejudiced by being tried with defendants who were not his coconspirators."). As this court and the Seventh Circuit found, there was sufficient evidence that Maldonado conspired with both other defendants. *See Maldonado*, 893 F.3d at 485–86.

11

by one year. 18 U.S.C. § 3621(e)(2)(B). Inmates convicted of a violent offense, including those with a current felony involving a firearm, are not eligible for early release. *See id.*; 28 C.F.R. § 550.55(b)(5)(ii). The government argues that because Maldonado completed two substance abuse treatment programs in pre-sentence detention, he no longer had a drug problem, and that counsel made a strategic decision to portray Maldonado as rehabilitated.

The court finds that Maldonado's claim fails for a more fundamental reason: Maldonado was not eligible for early release under RDAP because he was convicted for being a felon in possession of a firearm, *see* 21 U.S.C. § 922(g)(1), and the court found (over defense counsel's objection) that he possessed firearms in relation to his offense, *see* U.S.S.G. § 2D1.1(b)(1). At most, counsel could have argued for a recommendation that the BOP allow Maldonado to participate in RDAP. *See United States v. Martinez*, 738 F. App'x 361, 365 (7th Cir. 2018) ("[D]ecisions about participation in RDAP rest entirely with the Bureau of Prisons, not sentencing courts."). Such a recommendation could not have altered the length of Maldonado's custody sentence, and thus counsel's failure to request it did not prejudicially affect the result for purposes of § 2255, which considers the legality of a defendant's "custody" or "sentence." *Cf. Lopez v. Rios*, 553 F. App'x 610 (7th Cir. 2014) (an inmate's § 2241 habeas corpus challenge was "futile" where the BOP denied early release because of his firearm possessions and he had no claim that his continued custody violated the Constitution or federal law).

Maldonado next contends that defense counsel did not effectively develop mitigation evidence. First, Maldonado claims that counsel failed to emphasize the extent of his substance abuse—but the PSR reported Maldonado's "extensive" alcohol and drug use from a young age, and defense counsel's sentencing memorandum explicitly addressed this history. (PSR [251] at 27; *see* Def.'s Sent'g Mem. [281] at 4.) At sentencing, counsel did not highlight Maldonado's addiction, but noted that since being taken into custody pretrial, "there were no more drugs" and being incarcerated "truly changed Mr. Maldonado." (Sent'g Tr. at 72.) Maldonado's allocation letter also confirmed that he has "been sober for some time now" and had been "taking substance

abuse" classes. (*Id.* at 77.) To the extent counsel could have highlighted these issues more forcefully, the decision to focus on Maldonado's rehabilitation, instead of his past addiction, was not objectively unreasonable. If the PSR did not "fully incorporate" his addiction problems, as Maldonado suggests, the PSR and sentencing memorandum did present significant details about Maldonado's substance use; further arguments would not have altered his sentence. *See United States v. Smith*, No. 13 C 7709, 2014 WL 2459671, at *7 (N.D. Ill. June 2, 2014) (collecting cases where counsel failed to offer an argument at sentencing, but the court found no prejudice because the mitigating evidence was contained in sentencing documents).

Second, Maldonado takes issue with counsel's failure to develop mitigating evidence regarding his mental health. Defense counsel did not raise any mental health problems during sentencing, though he mentioned Maldonado's "rough childhood," marred by poverty, drug use, and gang and domestic violence. (Sent'g Tr. at 71–72; *see* Def.'s Sent'g Mem. at 3–4.) According to the PSR, Maldonado denied a history of suicidal thoughts or chronic mental health issues; although he felt anxious and depressed while incarcerated and received mental health counseling in pre-trial detention, Maldonado reported that once the trial ended, his mood stabilized and he no longer needed psychiatric services. (PSR at 27.) In his § 2255 motion, however, Maldonado contends that he "readily admitted" to "mental deficiencies" and that those issues were "only minimally documented" in the PSR. (Def.'s Mem. at 11.) Maldonado does not identify any specific mental illness, but argues that counsel should have ordered a mental health examination, which would have shown a "diminished mental state." Relatedly, Maldonado suggests that counsel should have ordered an MRI to explore the "behavioral impact of serious head trauma"—a reference to an episode in 2000 when, as recounted in the PSR, Maldonado awoke from a week-long coma with memory loss, significant head trauma, and no recollection of the incident that resulted in trauma. (PSR at 26). The probation officer requested medical records from the hospital about this incident, but none were found. (*Id.*) The PSR also briefly notes that Maldonado

has scars on his head from an unspecified accident and suffered a laceration above his left eyebrow. (*Id.*)

These allegations are too speculative to support § 2255 relief. In so ruling, the court is sensitive to Maldonado's pro se status, and does not suggest that he should have provided a clinical psychiatric or medical diagnosis. But Maldonado does not describe any effects or symptoms of his mental health or head trauma, or provide any other basis for the conclusion that the need for further investigation should have been obvious to counsel. Moreover, even assuming some error by counsel, Maldonado has not established prejudice. The court cannot conclude, based on Maldonado's tenuous chain of events and vague allegations, that medical diagnostic tools would have uncovered additional mitigating evidence and that this, in some unspecified way, would have affected the court's sentencing decision.[6] *See Andrashko v. Borgen*, 88 F. App'x 925, 929 (7th Cir. 2004) ("[T]he mere possibility of a positive effect on the trial court's sentencing decision is too speculative a basis for relief."). Maldonado appears to believe that he needed, and perhaps still needs, mental health and substance abuse treatment—but a § 2255 motion is not the proper vehicle for his request for such treatment. Defense counsel's performance at sentencing offers no basis for finding ineffective assistance of counsel.

## II.     Compassionate Release

Additionally, on June 20, 2020, Maldonado filed a motion for compassionate relief, which he renewed on July 16, 2020 [359, 368], pursuant to 18 U.S.C. § 3582(c)(1)(A). Under that subsection, a court may reduce the term of a defendant's imprisonment if the court finds that an

---

[6] Maldonado's cited cases are distinguishable, as both contained specific mental impairments and described how further evidence would have altered the proceedings. *See Daniels v. Woodford*, 428 F.3d 1181, 1204–10 (9th Cir. 2005) (counsel failed to investigate recorded schizophrenia, paranoia, psychotic episodes, and mind-altering medications due to non-strategic reasons, and therefore had no evidence for a mental defense to first-degree murder or for capital sentencing); *McCoy v. Wainwright*, 804 F.2d 1196, 1197–98 (11th Cir. 1986) (defendant alleged that he was under the custody of a doctor and therapists for continued treatment of heroin and alcohol abuse, he was not competent to cooperate with counsel, and counsel failed to investigate an insanity defense).

"extraordinary and compelling" reason warrants the reduction, in light of factors set forth in 18 U.S.C. § 3553. Maldonado asserts that the threat of the COVID-19 virus constitutes an extraordinary and compelling reason to reduce his sentence, given his underlying health conditions. His medical records reveal that he suffers from diabetes and high blood pressure (hypertension), among other ailments. (Maldonado Medical Records [367].) These conditions increase the risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 11, 2022). Given this, the government acknowledged in its response brief that Maldonado established an extraordinary and compelling reason, but argued that he was nonetheless not entitled to relief under § 3582(c)(1)(A) or the sentencing factors. (Gov't Resp. [366] at 11.)

Since the parties' briefing, however, the circumstances of the COVID-19 virus have changed, just as they are likely to change in the future. The Seventh Circuit has emphasized the importance of vaccines in evaluating a prisoner's risk from the virus, explaining that where a prisoner declines to be vaccinated, he cannot characterize his "self-incurred" risk as "extraordinary and compelling." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Maldonado's medical records run though July 6, 2020 and, as of that date, he had not received any COVID-19 vaccine. The court acknowledges the unpredictability of the COVID-19 virus. *See, e.g.*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Jan. 11, 2022) ("We don't know how effective the vaccines will be against new variants that may arise."). Nonetheless, given the availability and importance of vaccines in fighting the virus, the court cannot evaluate Maldonado's motion without updated medical records clarifying this issue.

The current record is lacking in other ways. Maldonado points to his clean disciplinary record and rehabilitation in custody to support his argument for release, and, in his motion for disposition, claims that his mandatory minimum would be lower under the non-retroactive First Step Act and new caselaw. The Seventh Circuit has recently explained that courts have broad discretion when deciding compassionate release motions, and may consider such issues. *See*

15

*United States v. Black*, 999 F.3d 1071, 1075–76 (7th Cir. 2021) (courts may consider the First Step Act's legislative changes); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (courts are not limited by the Sentencing Commission's policy statements). However, the parties have not provided Maldonado's disciplinary record, and the government has not explained whether its position has changed given recent legal and medical developments. The government is therefore directed to obtain and file Maldonado's updated medical records and disciplinary records under seal. Maldonado's filing of this motion constitutes a limited waiver of his right to confidentiality in those records.

## **CONCLUSION**

For the reasons stated above, the court concludes that an evidentiary hearing is necessary to decide Maldonado's § 2255 motion. The Federal Defender is directed to identify an attorney to represent Maldonado for purposes of this hearing. A status conference is set for February 8, 2022. The court also reserves ruling on Maldonado's § 3582(c)(1)(A) motion for compassionate release pending review of his medical and disciplinary records. The court directs the government to produce those materials within 21 days.

ENTER:

Dated: January 13,2022

*[signature]*
REBECCA R. PALLMEYER
United States District Judge